**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| DEBORAH PITTMAN JONES, Individually and for Others Similarly Situated | **Case No. _____** |
| v. | Jury Trial Demanded |
| AMERICAN SENIOR COMMUNITIES, LLC and EAGLECARE, LLC d/b/a AMERICAN SENIOR COMMUNITIES | FLSA Collective Action Rule 23 Class Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.      Deborah Pittman Jones (Jones) brings this class and collective action to recover unpaid wages and other damages from American Senior Communities, LLC (ASC) and EagleCare, LLC d/b/a American Senior Communities (EagleCare) (together, Defendants).

2.      Defendants employ Jones as a Licensed Practical Nurse (LPN).

3.      Specifically, Defendants employ Jones as an LPN at ASC's Fairway Village facility in Indianapolis, Indiana

4.      Like the Putative Class Members (as defined below), Jones regularly works more than 40 hours in a workweek.

5.      But Defendants do not pay these employees for all the hours they work.

6.      Instead, ASC requires Jones and the Putative Class Members to clock out for their 30-minute "meal breaks."

7.      Jones and the Putative Class Members are thus not paid for that time.

8.      But Jones and the Putative Class Members do not actually receive *bona fide* meal breaks.

9.      Instead, Defendants require Jones and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Defendants continuously subject them to work interruptions during their "meal breaks."

10.     Defendants' meal break policy violates the Fair Labor Standards Act (FLSA) by depriving Jones and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek.

11.     Likewise, Defendants' meal break policy violates the Indiana Wage Payment Law (IWPL) by depriving Jones and the Indiana Class Members (as defined below) of "straight time" wages (at their regular hourly rates) for all hours worked when these employees work fewer than 40 hours in a workweek.

12.     Similarly, to complete their patient care job duties, Jones and the Putative Class Members are forced to perform compensable work before and/or after their scheduled shifts "off the clock."

13.     But Defendants do not pay Jones and the Putative Class Members for this compensable "off the clock" work.

14.     Defendants' "off the clock" practice violates the FLSA by depriving Jones and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek.

15.     Likewise, Defendants' "off the clock" practice violates the IWPL by depriving Jones and the Indiana Class Members of "straight time" wages (at their regular hourly rates) for all hours worked when these employees work fewer than 40 hours in a workweek.

### JURISDICTION & VENUE

16.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

17.    The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18.    This Court has general personal jurisdiction over ASC because ASC is a domestic limited liability company headquartered in Indianapolis, Indiana.

19.    This Court has general personal jurisdiction over EagleCare because EagleCare is a domestic limited liability company headquartered in Indianapolis, Indiana.

20.    Venue is proper because Defendants maintain their shared headquarters in Indianapolis, Indiana, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

PARTIES

21.    Defendants have employed Jones as an LPN at ASC's Fairway Village facility in Indianapolis, Indiana since approximately July 2017.

22.    Throughout her employment, Defendants classified Jones as non-exempt and paid her on an hourly basis.

23.    Throughout her employment, ASC subjected Jones to its common practice of requiring her to clock out for so-called "meal breaks."

24.    But throughout her employment, ASC required her to perform compensable work during her "off the clock" unpaid meal breaks.

25.    Similarly, throughout her employment, Jones was regularly forced to work "off the clock" before and/or after her shift to complete her patient care responsibilities for Defendants' shared predominant benefit.

26.    Jones's written consent is attached as **Exhibit 1**.

27.    Jones brings this action on behalf of herself and other similarly situated hourly, non-exempt patient care employees who work for Defendants.

28.    Defendants uniformly require these employees to clock out for so-called "meal breaks" if they are unable to take—and do not clock out and record they took—a *bona fide* meal break.

29.    But ASC requires these employees to perform compensable work and/or subjects them to constant work interruptions during their "off the clock" unpaid meal breaks.

30.    Thus, ASC uniformly deprives these employees of wages (including overtime wages) for all hours worked (including those worked after 40 in a workweek) in violation of the FLSA and/or IWPL.

31.    The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt employees who work for, or on behalf of ASC through EagleCare at any ASC facility[1] who were eligible for meal break(s) at any time during the past 3 years ("FLSA Collective Members").**

32.    Jones also seeks to represent such a class under the IWPL pursuant to FED. R. CIV. P. 23.

33.    The Indiana Class of similarly situated employees is defined as:

> **All hourly, non-exempt employees who work for, or on behalf of ASC through EagleCare at any ASC facility[2] in Indiana who were eligible for meal break(s) at any time during the past 3 years ("Indiana Class Members").**

34.    The FLSA Collective Members and Indiana Class Members are collectively referred to as the "Putative Class Members."

35.    ASC is an Indiana limited liability company that maintains its headquarters in Indianapolis, Indiana.

---

[1] *See* https://www.asccare.com/communities/ (identifying all ASC's facilities) (last visited July 31, 2023).
[2] *Id.* (last visited July 31, 2023).

36.     ASC may be served with process by serving its registered agent: **Teresa C. Williams, 6900 South Gray Road, Indianapolis, Indiana 46237**, or wherever she may be found.

37.     ASC requires the patient care employees who work in its facilities, including Jones and the Putative Class Members, to be paid through its affiliated entity, EagleCare.

38.     EagleCare is an Indiana limited liability company that maintains its headquarters in Indianapolis, Indiana.

39.     EagleCare may be served with process by serving its registered agent: **Cate Sabatine, 6900 South Gray Road, Indianapolis, Indiana 46237**, or wherever she may be found.

## COVERAGE UNDER THE FLSA

40.     At all relevant times, ASC was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

41.     At all relevant times, EagleCare was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

42.     At all relevant times, ASC was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

43.     At all relevant times, EagleCare was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

44.     At all relevant times, ASC has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

45.     At all relevant times, EagleCare has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

46.　　At all relevant times, ASC has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including medical tools and equipment, cell phones/devices, personal protection equipment, etc.) that have been moved in or produced for commerce.

47.　　At all relevant times, EagleCare has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including medical tools and equipment, cell phones/devices, personal protection equipment, etc.) that have been moved in or produced for commerce.

48.　　In each of the past 3 years, ASC has had and has an annual gross volume of sales made or business done of not less than $1,000,000.00.

49.　　In each of the past 3 years, EagleCare has had and has an annual gross volume of sales made or business done of not less than $1,000,000.00.

50.　　At all relevant times, Jones and the Putative Class Members were Defendants' "employees" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

51.　　At all relevant times, Jones and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

52.　　At all relevant times, ASC required Jones and the Putative Class Members to clock out for their 30-minute "meal breaks," regardless of whether they actually received a *bona fide* meal break.

53.　　But at all relevant times, ASC required Jones and the Putative Class Members to perform compensable work throughout their shifts, including during their "off the clock" meal breaks.

54.　　As a result, Defendants failed to pay Jones and the Putative Class Members for this compensable "off the clock" work, including overtime wages, in violation of the FLSA.

55.    Defendants' uniform meal break policy, which deprives Jones and the Putative Class Members of overtime compensation for all hours worked after 40 in a workweek, violates the FLSA. 29 U.S.C. § 207(a) & (e).

### FACTS

56.    ASC bills itself as "the largest senior healthcare provider in the state of Indiana."[3]

57.    EagleCare and ASC are affiliated entities, in that ASC requires the patient care employees who work in its facilities to be paid through EagleCare.

58.    ASC and EagleCare have common ownership and/or management.

59.    ASC and EagleCare have a shared corporate headquarters in Indianapolis, Indiana.

60.    Likewise, ASC and EagleCare have a shared and/or centralized human resources department.

61.    ASC and EagleCare also perform the same or similar activities: operating senior care facilities across Indiana.

62.    ASC and EagleCare are a unified operation directed to accomplish their shared business objective of operating senior care facilities.

63.    Thus, ASC and EagleCare are, in effect, a single enterprise under the FLSA.

64.    To meet their shared business objective, Defendants employ patient care workers, including Jones and the Putative Class Members, to work in ASC's senior care facilities.

65.    ASC maintains control, oversight, and direction of Jones and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices that apply to the patient care employees that work in its facilities through EagleCare.

---

[3] https://www.asccare.com/communities/ (last visited on July 31, 2023).

66.     ASC controls Jones's and the Putative Class Members' rates and methods of pay, their schedules and assignments, and their patient care work.

67.     ASC requires Jones and the Putative Class Members to follow their uniform policies, procedures, and protocols that uniformly apply to the patient care employees that work in its various facilities through EagleCare.

68.     Indeed, Jones's and the Putative Class Members' patient care work must strictly adhere to the uniform quality standards put in place by ASC .

69.     ASC supervises and controls Jones's and the Putative Class Members' patient care work and prohibit these employees from straying from ASC's uniform procedures, plans, protocols, and specifications.

70.     ASC possess the authority to hire, fire, and discipline Jones and the Putative Class Members.

71.     ASC (through EagleCare) maintains employment records for Jones and the Putative Class Members.

72.     Without the patient care work Jones and the Putative Class Members perform, ASC would not be able to meet its business objective of operating senior care facilities across Indiana.

73.     Thus, Jones's and the Putative Class Members' patient care work is integral to, and benefits, ASC's business objective.

74.     In sum, ASC employed, jointly (with EagleCare) or otherwise, Jones and the Putative Class Members during the relevant period.

75.     ASC uniformly classifies the patient care employees that work in its various senior care facilities, including Jones and the Putative Class Members, as non-exempt and pay them on an hourly basis.

76. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

77. For example, Defendants have employed Jones as an LPN at ASC's Fairway Village facility in Indianapolis, Indiana since approximately July 2017.

78. As an LPN, Jones's primary responsibilities include providing direct patient care to the senior residents at ASC's Fairway Village, such as checking vitals, charting residents' medical histories and treatments, monitoring residents, bathing residents, feeding residents, passing medications, treating wounds, providing daily living assistance to residents, and generally assisting doctors and other patient care staff.

79. Throughout her employment, Defendants classified Jones as non-exempt and paid her on an hourly basis.

80. Throughout her employment, ASC required her to clock out for her 30-minute "meal breaks," regardless of whether she actually received a *bona fide* meal break.

81. But throughout her employment, Jones did not actually receive *bona fide* meal breaks.

82. Similarly, throughout her employment, Jones was regularly forced to work "off the clock" before and/or after her shift to complete her patient care responsibilities for ASC's predominant benefit.

83. Jones and the Putative Class Members perform their jobs under ASC's supervision and use materials, equipment, and technology approved and supplied by ASC.

84. ASC requires Jones and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

85. At the end of each pay period, Jones and the Putative Class Members received wages from ASC (through EagleCare) that were determined by common systems and methods that ASC selected and controlled.

86.     ASC requires its hourly, non-exempt patient care employees, including Jones and the Putative Class Members, to record their hours worked using their timeclock system (Kronos).

87.     In fact, ASC requires its hourly, non-exempt patient care employees, including Jones and the Putative Class Members, to "clock out" for 30 minutes a day for their "meal breaks."

88.     But Jones and the Putative Class Members do not actually receive *bona fide* meal breaks.

89.     Instead, ASC requires Jones and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, including during their "off the clock" unpaid "meal breaks."

90.     And ASC continuously subjects these patient care employees to work interruptions during their "off the clock" unpaid "meal breaks."

91.     Because of these constant work interruptions, Jones and the Putative Class Members are not free to engage in personal activities during their "off the clock" unpaid meal periods.

92.     Rather, during their "off the clock" unpaid "meal breaks," Jones and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

93.     Thus, Jones and the Putative Class Members routinely spend their "off the clock" unpaid "meal breaks" performing work for ASC's—not these employees'—predominant benefit.

94.     This unpaid time is compensable under the FLSA because ASC knew, or should have known, that (1) Jones and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on ASC's premises, and/or (8) they spent

their unpaid meal periods substantially performing their regular patient care duties for ASC's predominant benefit.

95.     The unpaid time is also compensable under the IWPL because Defendants agreed to pay Jones and the Indiana Class Members an hourly rate of pay for all hours they worked, and ASC failed to pay these employees all their earned wages for all hours worked (including the time these employees worked during their "off the clock" unpaid "meal breaks") at their agreed hourly rates.

96.     Defendants fail to exercise their shared duty as Jones's and the Putative Class Members' employer(s) to ensure these employees are not performing work that Defendants do not want performed "off the clock" during their unpaid "meal breaks."

97.     And Defendants know Jones and the Putative Class Members routinely work "off the clock" during their unpaid meal breaks because Defendants expect and require them to do so.

98.     In fact, Jones and the Putative Class Members repeatedly complained to ASC's management, HR, and their supervisors about being forced to work during their "off the clock" unpaid "meal breaks."

99.     Despite accepting the benefits, Defendants do not pay Jones and the Putative Class Members for the compensable work they perform during their "off the clock" meal breaks.

100.    Thus, under Defendants' uniform meal break policy, Jones and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked over 40 hours in violation of the FLSA.

101.    Likewise, under Defendants' uniform meal break policy, Jones and the Indiana Class Members are denied "straight time" pay (at their agreed hourly rates) for those on-duty "meal breaks" in workweeks in which they work fewer than 40 hours in violation of the IWPL.

102.    Similarly, to complete their patient care responsibilities (in accordance with ASC's policies, procedures, and expectations), Jones and the Putative Class Members are necessarily forced to work "off the clock" before and/or after their scheduled shifts.

103.    Like Jones's and the Putative Class Members' "off the clock" meal breaks, Defendants do not pay these employees for their pre- and post-shift "off the clock" work.

104.    But like the patient care work Jones and the Putative Class Members routinely perform during their "off the clock" unpaid "meal breaks," their pre- and post-shift "off the clock" work is compensable.

105.    Indeed, before and/or after their shifts, Jones and the Putative Class Members are forced to substantially perform their regular patient care job duties "off the clock" for ASC's—not these employees'—predominant benefit.

106.    Thus, under Defendants' uniform "off the clock" practice, Jones and the Putative Class Members are denied overtime pay for their compensable "off the clock" work in workweeks in which they worked over 40 hours in violation of the FLSA.

107.    Likewise, under Defendants' uniform "off the clock" practice, Jones and the Indiana Class Members are denied "straight time" pay (at their agreed hourly rates) for their compensable "off the clock" work in workweeks in which they work fewer than 40 hours in violation of the IWPL.

108.    Jones worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

109.    For example, during the workweek ending on June 25, 2023, Jones worked 48 hours (not including the time she worked "off the clock" during her unpaid meal breaks and before/after her shifts).

110.    Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

111.    Indeed, Jones and the Putative Class Members typically work 8-hour shifts for up to 6 days a week.

112.    And Jones and the Putative Class Members regularly are also required to work during "off the clock" during their unpaid meal breaks and before/after their shifts in order to complete their job duties and responsibilities.

113.    As a result, Jones and the Putative Class Members work more than 40 hours in a typical workweek.

114.    When Jones and the Putative Class Members work more than 40 hours in a workweek, Defendants do not pay them overtime wages for all overtime hours worked because Defendants fail to include time these employees work "off the clock" during their unpaid meal breaks and/or before/after their shifts in their total number of hours worked in a workweek in violation of the FLSA.

115.    Likewise, when Jones and the Indiana Class Members work fewer than 40 hours in a workweek, Defendants do not pay them all their earned wages (at their agreed hourly rates) for all hours worked because Defendants fail to include time these employees work "off the clock" during their unpaid meal breaks and/or before/after their shifts in their total number of hours worked in a workweek in violation of the IWPL.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

116.    Jones incorporates all other paragraphs by reference.

117.    Jones brings her claims as a class and collective action under Section 216(b) of the FLSA and FED. R. CIV. P. 23.

118.    The Putative Class Members were uniformly victimized by Defendants' meal break policy and "off the clock" practice, which are in willful violation of the FLSA and/or IWPL.

119.    Other Putative Class Members worked with Jones and indicated they were paid in the same manner, performed similar work, and were subject to Defendants' same meal break policy and "off the clock" practice.

120.    Based on her experience with Defendants, Jones is aware Defendants' illegal practices were imposed on the Putative Class Members.

121.    The Putative Class Members are similarly situated in all relevant respects.

122.    Even if their precise job duties and location might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

123.    Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

124.    Rather, the Putative Classes are held together by Defendants' uniform meal break policy and "off the clock" practice that systematically deprived Jones and the Putative Class Members of earned wages for all hours worked and overtime pay for all hours worked after 40 in a workweek.

125.    Defendants' failure to pay these employees overtime wages at the rates required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Class Members.

126.    Likewise, Defendants failure to pay these employees all their earned wages at the rates agreed to be the parties, as required by the IWPL, results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Class Members.

127.    Defendants' records reflect the number of hours the Putative Class Members recorded they worked each week.

128.    The back wages owed to Jones and the Putative Class Members can be calculated using the same formula applied to the same records.

129.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts.

130.    Therefore, the issue of damages does not preclude class or collective treatment.

131.    Jones's experiences are therefore typical of the experiences of the Putative Class Members.

132.    Jones has no interest contrary to, or in conflict with, the Putative Class Members.

133.    Like each Putative Class Member, Jones has an interest in obtaining the unpaid wages and overtime owed under federal and/or state law.

134.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

135.    Absent this class and collective action, many Putative Class Members will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating the FLSA and IWPL.

136.    Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

137.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

138.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

139.    Among the common questions of law and fact are:

a.      Whether Defendants' meal break policy deprived Jones and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and IWPL;

b.      Whether Defendants engaged in a policy and practice of requiring Jones and the Putative Class Members to work "off the clock" before and/or after their shifts in violation of the FLSA and IWPL;

c.      Whether Defendants' "off the clock" practice deprived Jones and the Putative Class Members of pay for time worked "off the clock" before and/or after their shifts in violation of the FLSA and IWPL;

d.      Whether Defendants failed to pay Jones and the Putative Class Members overtime compensation for all hours worked after 40 in a workweek, including hours worked "off the clock" during missed and interrupted meal breaks and before/after their shifts, in violation of the FLSA;

e.      Whether Defendants failed to pay Jones and the Indiana Class Members all their earned wages (at their agreed hourly rates) for all hours worked in violation of the IWPL;

f.      Whether Defendants knew, or had reason to know, Jones and the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" during missed and interrupted meal breaks and before/after their shifts in violation of the FLSA and IWPL;

g.      Whether Defendants' violations of the FLSA and/or IWPL resulted from a continuing course of conduct;

h.      Whether Defendants' decision not to pay Jones and the Putative Class Members overtime compensation for all overtime hours worked was made in good faith;

      i.      Whether Defendants' decision not to pay Jones and the Indiana Class Members all their earned wages at the rates Defendants agreed to pay them for all hours worked was made in good faith; and

      j.      Whether Defendants' violations of the FLSA and IWPL were willful.

140.    Jones knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

141.    As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and IWPL with respect to Jones and the Putative Class Members.

142.    Defendants' illegal policies deprived Jones and the Putative Class Members of wages, including premium overtime wages, which they are owed under federal and/or state law.

143.    There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

144.    This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

145.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' business and personnel records.

### DEFENDANTS' FLSA AND IWPL VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA AND IWPL

146.    Jones incorporates all other paragraphs by reference.

147.    Defendants knew the patient care employees that worked at ASC's various senior care facilities, including Jones and the Putative Class Members, were their employees.

148.    Defendants knew Jones and the Putative Class Members were non-exempt employees entitled to overtime because Defendants uniformly classified them as such.

149.    Defendants knew Jones and the Putative Class Members were their hourly employees because Defendants uniformly paid them on an hourly basis.

150.    Defendants knew they were subject to the IWPL.

151.    Defendants knew the IWPL required them to pay their employees, including Jones and the Indiana Class Members, all their earned wages (at the hourly rates agreed to by the parties) for all hours worked.

152.    Defendants knew they were subject to the FLSA's overtime provisions.

153.    Defendants knew the FLSA required them to pay non-exempt employees, including Jones and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked after 40 in a workweek.

154.    Defendants knew Jones and the Putative Class Members worked more than 40 hours in a workweek because Defendants required these employees to record their hours worked using their timeclock system.

155.    Defendants knew the FLSA and IWPL required them to pay hourly, non-exempt employees, including Jones and the Putative Class Members, for all hours these employees performed compensable work.

156.    Defendants knew that, as Jones's and the Putative Class Members' employer(s), they had a shared duty to ensure these employees were not performing work "off the clock" that Defendants did not want performed during their unpaid "meal breaks" and before/after their shifts.

157.    Defendants knew they prohibited Jones and the Putative Class Members from clocking in before their scheduled shift start time and clocking out after their scheduled shift end time.

158. Defendants knew Jones and the Putative Class Members regularly worked "off the clock" before and after their shifts.

159. Defendants knew they required Jones and the Putative Class Members to clock out for 30 minutes a day for so-called "meal breaks."

160. Defendants knew Jones and the Putative Class Members did not actually receive *bona fide* meal breaks.

161. Defendants knew Jones and the Putative Class Members regularly worked during their "off the clock" unpaid meal breaks because Defendants expected and required them to do so.

162. Defendants knew Jones and the Putative Class Members regularly spent their "off the clock" meal breaks substantially performing their normal patient care job duties for Defendants' shared predominant benefit.

163. Indeed, Jones and the Putative Class Members repeatedly complained to Defendants' management, HR, and their supervisors about being forced to work "off the clock" during their unpaid "meal breaks" and before/after their shifts.

164. Thus, Defendants knew Jones and the Putative Class Members performed compensable work "off the clock."

165. Nonetheless, Defendants deducted 30 minutes a day from Jones's and the Putative Class Members' recorded work time for "meal breaks" when these employees did not actually receive (and, therefore, did not clock out for) a meal break.

166. And Defendants did not permit Jones and the Putative Class Members from clocking in before their scheduled shift start time and clocking out after their scheduled shift end time, even if they were working.

167. Thus, Defendants knew, should have known, or recklessly disregarded the fact that they did not pay Jones and the Putative Class Members for all hours these employees performed

compensable work, including work performed "off the clock" during their unpaid meal breaks and before/after their scheduled shifts.

168.    In other words, Defendants knew, should have known, or recklessly disregarded the fact that they failed to pay Jones and the Putative Class Members overtime wages for all overtime hours worked, including hours worked "off the clock," in violation of the FLSA.

169.    Likewise, Defendants knew, should have known, or recklessly disregarded the fact that they failed to pay Jones and the Indiana Class Members all their earned wages for all hours worked, including hours worked "off the clock," in violation of the IWPL.

170.    Defendants' failure to pay Jones and the Putative Class Members overtime for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime for all overtime hours worked made in good faith.

171.    Likewise, Defendants' failure to pay Jones and the Indiana Class Members all their earned wages for all hours worked was neither reasonable, nor was the decision not to pay these employees all their earned wages for all hours worked made in good faith.

172.    Defendants knowingly, willfully, and/or in reckless disregard carried out their illegal meal break policy and "off the clock" practice that deprived Jones and the Putative Class Members of earned wages and overtime wages in violation of the FLSA and/or IWPL.

### COUNT I

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

173.    Jones incorporates all other paragraphs by reference.

174.    Jones brings her FLSA claim as a collective action on behalf of herself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

175.    Defendants violated, and are violating, the FLSA by employing non-exempt employees (Jones and the FLSA Collective Members) in an enterprise engaged in commerce or in the production

of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without paying such employees overtime wages for all the hours they worked after 40 in a workweek, including hours worked "off the clock" during these employees' unpaid "meal breaks" and/or before/after their shifts.

176.    Defendants' unlawful conduct harmed Jones and the FLSA Collective Members by depriving them of the overtime wages they are owed.

177.    Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Jones and the FLSA Collective Members overtime compensation for all overtime hours worked.

178.    Accordingly, Jones and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

<u>**COUNT II**</u>

**FAILURE TO PAY ALL EARNED WAGES UNDER THE IWPL**
**(INDIANA CLASS ONLY)**

179.    Jones incorporates all other paragraphs by reference.

180.    Jones brings her claim under the IWPL as a class action on behalf of herself and the Indiana Class Members pursuant to FED. R. CIV. P. 23.

181.    The conduct alleged violates the IWPL, IND. CODE §§ 22-2-5, *et seq.*

182.    At all relevant times, ASC was an "employer" subject to the requirements of the IWPL. *See* IND. CODE § 22-2-9-1(a).

183.    At all relevant times, EagleCare was an "employer" subject to the requirements of the IWPL. *See* IND. CODE § 22-2-9-1(a).

184.    At all relevant times, Defendants employed Jones and the Indiana Class Members as covered "employees" within the meaning of the IWPL. *See* IND. CODE § 22-2-9-1(b).

- 21 -

185.     Section 22-2-5-1 of the IWPL requires employers, like Defendants, to pay employees, including Jones and the Indiana Class Members, "for all wages earned" within not more than ten business days from the date they are earned. IND. CODE § 22-2-5-1(b).

186.     Section 22-2-4-4 of the IWPL further requires employers, like Defendants, to pay employees, including Jones and the Indiana Class Members, "the full value of his [or her] labor" for all time worked at the rate agreed to by the parties. IND. CODE § 22-2-4-4.

187.     During the course of their employment, Defendants agreed to pay Jones and each Indiana Class Member an hourly rate for all hours they worked under and up to 40 hours in a workweek.

188.     Jones and each Indiana Class Member accepted Defendants' offer.

189.     But during the course of their employment, Defendants failed to pay Jones and the Indiana Class Members all their earned wages for all time they worked at the rates Defendants agreed to pay them because Defendants failed to include the time these employees worked "off the clock" during their unpaid "meal breaks" and/or before/after their shifts in their total number of hours worked in a workweek.

190.     Thus, Defendants violated, and are violating, the IWPL by failing to pay Jones and the Indiana Class Members all wages earned (at the rates Defendants agreed to pay them) for all hours worked, including hours worked "off the clock." *See* IND. CODE §§ 22-2-4-4 and 22-2-5-1(b).

191.     Jones's and the Indiana Class Members' earned wages have remained unpaid for more than ten business days from the date they were earned. *See* IND. CODE § 22-2-5-1(b).

192.     Defendants' unlawful conduct harmed Jones and the Indiana Class Members by depriving them of the earned wages they are owed.

193.    Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to timely pay Jones and the Indiana Class Members all earned wages (at the rates agreed to by the parties) for all hours worked.

194.    Defendants' failure to pay Jones and the Indiana Class Members all earned wages (at the rates agreed to by the parties) for all hours worked was not the result of a *bona fide* dispute.

195.    Accordingly, Jones and the Indiana Class Members are entitled to recover their unpaid earned "straight time" wages (at their agreed hourly rates) under the IWPL, plus liquidated damages in an amount equal to 10% of their unpaid wages for each day these wages remain unpaid, as well as attorney's fees and costs. *See* IND. CODE § 22-2-5-2.

### JURY DEMAND

196.    Jones demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Jones, individually and on behalf of the Putative Class Members, seeks the following relief:

        a.    An Order designating the FLSA Collective as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

        b.    An Order designating the Indiana Class as a class action pursuant to FED. R. CIV. P. 23;

        c.    An Order appointing Jones and her counsel to represent the interests of the FLSA Collective and Indiana Class;

d.      An Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid overtime wages due to Jones and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid compensation;

e.      An Order finding Defendants liable to Jones and the Indiana Class Members for unpaid earned "straight time" wages owed under the IWPL, plus liquidated damages in an amount equal to 10% of their unpaid wages for each day these wages remain unpaid;

f.      Judgment awarding Jones and the Putative Class Members all unpaid wages, liquidated damages, and any and other penalties available under the FLSA and IWPL;

g.      An Order awarding attorney's fees, costs, and expenses;

h.      Pre- and post-judgment interest at the highest applicable rates; and

i.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Scott D. Gilchrist
Scott D. Gilchrist (#16720-53)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Phone: (317) 636-6481
sgilchrist@cohenandmalad.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**